ELECTRONICALLY FILED - 2025 Jun 17 3:12 PM - SUMTER - COMMON PLEAS - CASE#2025CP4301109

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS<br>THIRD JUDICIAL CIRCUIT |
| COUNTY OF SUMTER | |
| Sheila Buckman,<br><br>Plaintiff,<br><br>v.<br><br>The Lincoln Financial Life Insurance Company,<br><br>Defendant. | **SUMMONS** |

TO THE DEFENDANT ABOVE NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint herein, a copy of which is served upon you, and to serve a copy of your answer to this Complaint upon the subscriber at the address shown below within thirty (30) days (thirty five (35) days if served by United States Mail) after service hereof, exclusive of the date of such service, and if you fail to answer the Complaint, judgment by default will be rendered against you for the relief demanded in the Complaint.

**CROMER BABB & PORTER, LLC**
BY: *s/Shannon M. Polvi*
Shannon M. Polvi (#101837)
1418 Laurel Street, Suite A
Post Office Box 11675
Columbia, South Carolina 29211
Phone: (803) 799-9530
Fax: (803) 799-9533
*Attorney for Plaintiff*

June 17, 2025
Columbia, South Carolina

EXHIBIT
A

ELECTRONICALLY FILED - 2025 Jun 17 3:12 PM - SUMTER - COMMON PLEAS - CASE#2025CP4301109

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS<br>THIRD JUDICIAL CIRCUIT |
| COUNTY OF SUMTER | |
| Sheila Buckman, | |
| Plaintiff, | **COMPLAINT**<br>(Jury Trial Demanded) |
| v. | |
| The Lincoln Financial Life Insurance Company, | |
| Defendant. | |

Plaintiff, by and through undersigned counsel, complaining of Defendant herein, alleges as follows:

1. Plaintiff Sheila Buckman (hereinafter "Plaintiff" and "Ms. Buckman") is a resident of Sumter County, South Carolina, and she was formerly employed by Giant Cement Holding, Inc.

1. Defendant The Lincoln Financial Life Insurance Company (hereinafter "Defendant") is an insurance company operating throughout the United States and in South Carolina where it provides insurance benefits to employees of Giant Cement Holding, Inc.

2. This action is brought pursuant to Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"), as amended, 29 U.S.C. § 1001, *et seq*.

3. Defendant provided long term disability ("LTD") benefits to eligible employees through the Giant Cement Holding, Inc. Long Term Disability Insurance Plan ("the Plan"). Defendant identifies itself as the Plan Administrator. Defendant insures the LTD benefits due under the Plan.

4. Plaintiff is a Plan participant.

5. Defendant is a fiduciary with respect to the Plan.

ELECTRONICALLY FILED - 2025 Jun 17 3:12 PM - SUMTER - COMMON PLEAS - CASE#2025CP4301109

6. The Court has personal jurisdiction over Defendant, pursuant to ERISA Section 502(e), 29 U.S.C. §1132(e).

7. Venue is proper pursuant to ERISA Section 502(e)(2), 29 U.S.C. §1132(e)(2), in that the Plan is administered within the jurisdiction of this Court and because the events described herein occurred primarily in and around Sumter, South Carolina.

**FACTUAL ALLEGATIONS**

8. Ms. Buckman was formerly employed by Giant Cement Holding, Inc.

9. This lawsuit follows a multi-year cycle of Defendant wrongfully denying Ms. Buckman's long term disabilities benefits to which she is owed under the Plan.

10. In a decision dated March 15, 2024, Defendant determined that Ms. Buckman's LTD benefits are not payable beyond April 26, 2024.

11. Ms. Buckman timely appealed that decision to Defendant.

12. Since the filing of Ms. Buckman's appeal, Defendant retained a physician review and transferrable skills analysis. The medical records produced herewith, and listed above, conflict with the opinions in the physician review and transferrable skills analysis. Ms. Buckman remains disabled within the meaning of the Giant Cement Holding, Inc.'s LTD Policy.

13. To the present, Defendant continues to fail to apply the correct definition of disability to Ms. Buckman's case. This has been an error by Defendant that has repeated itself and is very harmful to Ms. Buckman for the company to willfully ignore the Plan. There is no other conclusion than that Defendant is willfully violating Ms. Buckman's rights when this issue has been raised repeatedly by Ms. Buckman and then repeated by Defendant.

ELECTRONICALLY FILED - 2025 Jun 17 3:12 PM - SUMTER - COMMON PLEAS - CASE#2025CP4301109

14. Defendant has misapplied the definition of disability. Giant Cement Holding, Inc.'s LTD Policy requires that to receive benefits Ms. Buckman must meet the following definition of disability:

> *"Disability" or "Disabled" means:*
>
> *1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:*
>
> *Applicable to Class 1:*
>
> *a. if the Covered Person is eligible for the Maximum Own Occupation benefit, "Disability" or "Disabled" means during the Elimination Period and until the Covered Person reaches the end of the Maximum Benefit Period, as a result of an Injury or Sickness, he is unable to perform the Material and Substantial Duties of his Own Occupation.*
>
> *Applicable to Class 2:*
>
> *b. i. if the Covered Person is eligible for the 60 Month Own Occupation benefit, "Disability" or "Disabled" means that during the Elimination Period and the next 60 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*
>
> *ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*
>
> *2. With respect to Covered Persons employed as pilots, co-pilots and crewmembers of an aircraft:*
>
> > *"Disability" or "Disabled" means as a result of Injury or Sickness the Covered Person is unable to perform the Material and Substantial Duties of Any Occupation.*
>
> *"Any Occupation" means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.*

15. Ms. Buckman is a Class 1 employee, so the definition of disability applicable to her LTD benefit is "maximum Own Occupation", per page 10 of the Plan. Per page 11 of the Plan that means that, based on her birth year of 1974, Ms. Buckman is eligible for benefits until she is 67 years old.

16. Defendant has willfully failed, despite several written reminders and appeals, to apply the definition of "Disability" on page 14 of the Plan for definition for Class 1 beneficiaries

ELECTRONICALLY FILED - 2025 Jun 17 3:12 PM - SUMTER - COMMON PLEAS - CASE#2025CP4301109

which states, "if you are eligible for the Maximum Own Occupation benefit, "Disability" or "Disabled" means during the Elimination Period and until you reach the end of the Maximum Benefit Period, as a result of an Injury or Sickness, you are unable to perform the Material and Substantial Duties of your Own Occupation." It has not done so, and by continuing to willfully refuse to apply the correct definition of “disability” to Ms. Buckman’s case, Defendant is intentionally violating Ms. Buckman’s rights, and it keeps happen on repeat again with the physician review and transferrable skills analysis sent on November 6, 2024.

17. The appeal filed on Ms. Buckman’s behalf on February 28, 2024 identified the same problem. Therein, the appeal described to Defendant that Ms. Buckman contests the MLS National Medical Evaluation Services assessments dated January 30, 2024 issued by Dr. Andrew Nava and Dr. Jonathan Joseph Eskenazi, and the Transferable Skills Analysis dated February 6, 2024. None of these documents were or are applicable to Ms. Buckman’s LTD claim.

18. The MLS National Medical Evaluation Services assessment dated January 30, 2024, the Transferable Skills Analysis dated February 6, 2024, the Dane Street Physical Medicine and Rehabilitation Opinion dated October 15, 2024, and the Vocational Memorandum – Appeal Transferable Skills Analysis dated November 1, 2024 are useless for the purposes of evaluating Ms. Buckman’s LTD claim because the evaluators fail to review or reference Ms. Buckman’s job description from her “own occupation.” As seen by a review of the documentation reviewed in the four assessments, the evaluators reviewed medical documentation. This is a fatally incomplete picture because an evaluator cannot opine whether Ms. Buckman can work her “own occupation” without reviewing the job description. For example, in the Vocational Memorandum – Appeal Transferable Skills Analysis dated November 1, 2024 in the first paragraph it states: “. For the purpose of this report, I reviewed the claim file and researched standard vocational resources.”

ELECTRONICALLY FILED - 2025 Jun 17 3:12 PM - SUMTER - COMMON PLEAS - CASE#2025CP4301109

Then, the same Analysis is, in error, referenced in the "Summary" section as follows: "An updated OASYS analysis was performed taking into consideration the above noted restrictions and limitations. Upon review of all available information, this VRC has found that the previously identified occupational alternatives continue to remain viable at this time as well as the additional following occupations." Then, the report identifies alternatives purported jobs that Ms. Buckman can perform: Administrative Assistant, Industrial-Health Engineer, and Scheduler, Maintenance, Industrial-Safety-and-Health Technician, Environmental Analyst, Occupational-Safety-and-Health Inspector, and Safety Inspector.

19. This is the same problem that has already been previously raised in Ms. Buckman's appeal letters. To the present, Defendant continues to apply the wrong definition of "disability" to Ms. Buckman's LTD claim for benefits.

20. The Lincoln's July 12, 2023 letter states, "Based on our review of the information contained in her claim file we have determined that Ms. Buckman can perform, with reasonable continuity, the material and substantial duties of the above occupation(s) based on her capacity and skill level. Therefore, she does not meet Giant Cement Holding, Inc.'s definition of disability beyond July 7, 2023 and we must deny her claim for further benefit consideration. Benefits will be paid through July 7, 2023, and her claim is closed as of July 8, 2023." The Plan requires a change of that determination, and it invalidates the evaluations from Dr. Andrew Nava and Dr. Jonathan Joseph Eskenazi, dated January 30, 2024 and the Transferable Skills Analysis dated February 6, 2024.

21. The July 12, 2023 denial letter and the evaluations from Dr. Andrew Nava and Dr. Jonathan Joseph Eskenazi, dated January 30, 2024 and the Transferable Skills Analysis dated February 6, 2024 are premised on The Lincoln determining that Ms. Buckman is purportedly able

ELECTRONICALLY FILED - 2025 Jun 17 3:12 PM - SUMTER - COMMON PLEAS - CASE#2025CP4301109

to perform other jobs. For example, on page 7 of Dr. Jonathan Joseph Eskenazi's assessment, which is referenced by incorporation in these recent Assessments, he opines "[t]he medical documentation on file shows that the claimant would be capable of working at a part-time basis with a schedule of working at least four hours per day during the time frames under review. She would be capable of working on a full-time basis given that there are no severe findings which would support the need for a reduced schedule." These were not Ms. Buckman's own occupation while she was employed by Giant Cement Holding, Inc. Therefore, such opinions and determination are the basis for an erroneous denial of Ms. Buckman's LTD benefits.

22. Ms. Buckman is a Class 1 employee, so the "Any Occupation" definition of disability that is only applicable to Class 2 employees is not applicable to Ms. Buckman. For further example of Defendant's misapplication of the definition of "disability", see the first paragraph in the Transferable Skills Analysis. It states, "[a] Transferable Skills Analysis utilizing the Occupational Access System (OASYS) was completed to assess the insured's transferable skills to determine if alternative occupations exist in the national economy." (emphasis added). Whether alternative occupations exist in the national economy are irrelevant to Ms. Buckman's Class 1 employee claim. Whether alternative occupations exist would only apply to Class 2 employee claims.

23. Question No. 3 of the MLS National Medical Evaluation Services assessments dated therein states, "Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 7/12/2023 and forward, and comment on the expected duration." The assessments do not accurately describe Ms. Buckman's restrictions from the medical records of the medical care providers who have assessed Ms.

ELECTRONICALLY FILED - 2025 Jun 17 3:12 PM - SUMTER - COMMON PLEAS - CASE#2025CP4301109

Buckman in person. These medical opinions are based on an inaccurate and incomplete review of documents and not Ms. Buckman.

24. The answer to Question No. 3 also provides directly contradictory opinions, by first acknowledging that Ms. Buckman has some restrictions (Ms. Buckman contests those listed in the assessment, as again those listed in the assessment are not accurate to what is actually in Ms. Buckman's medical records) and even after acknowledging that Ms. Buckman has restrictions, Dr. Andrew Nava then opines on page 9 that "[t]he claimant can work 8 hours per day, 5 days per week, with the above restrictions." This assessment is highly contested as inaccurate to the medical records already produced to the Lincoln (see e.g. those produced on January 8, 2024, and May 18, 2023) and supporting Ms. Buckman's continued disabled status (as reflected by the Social Security disability benefits continuation document issued by the Social Security Administration on January 29, 2024).

25. The denial of benefits follows the exact same errors under the Plan as described above, therein again wrongfully applying the Class 1 definition of disability in the evaluations done by Dr. John Baker and Dr. Gerard Grant, and the Vocational Specialist. As seen by the Vocational Specialist's opinion saying that Ms. Buckman can purportedly perform the occupations of Administrative Assistant, Industrial Health Engineer, and Scheduler, Maintenance, these three jobs were not the "own occupation" that Ms. Buckman was performing with Giant Cement Holding, Inc.

26. The November 1, 2024, Transferable Skills Analysis highlights several deficiencies that undermine its validity as an accurate assessment of Ms. Buckman's vocational capabilities. Six out of the seven occupations listed as examples of what she can supposedly perform bear no resemblance to her own occupation. This renders them irrelevant to the determination of her ability

ELECTRONICALLY FILED - 2025 Jun 17 3:12 PM - SUMTER - COMMON PLEAS - CASE#2025CP4301109

to work under the terms of the Plan. The analysis disregards the critical distinction between transferable skills and the specific demands of her role, which, as supported by the medical records already in the record and the supplemental records provided herein, she cannot fulfill due to her documented medical limitations. The inclusion of these extraneous positions reflects a fundamental misunderstanding of the Plan's requirements and improperly shifts the focus away from the central issue—Ms. Buckman's ability to perform her own occupation.

27. As described in Ms. Buckman's appeal on January 17, 2025, one notable deviation from prior assessments is the addition of a position purported to be Ms. Buckman's own occupation. However, even this solitary attempt fails under scrutiny. The role of "Industrial-Safety-and-Health Technician," which the analysis attributes to Ms. Buckman, was not her actual job. This mischaracterization demonstrates a superficial and flawed approach to the evaluation process. Without properly accounting for her specific job title, duties, and work environment, any conclusions drawn from such an analysis are inherently unreliable. It is critical that her precise occupational responsibilities be the foundation for any vocational analysis conducted under the Plan.

28. Furthermore, the misclassification of her occupation as an "Industrial-Safety-and-Health Technician" has broader implications. This position likely involves duties, physical requirements, and skillsets distinct from those Ms. Buckman actually performed. By failing to align the analysis with her true role, Defendant's assessment introduces a level of inaccuracy that not only undermines the evaluation but also unfairly prejudices the outcome. The Plan expressly requires an individualized assessment of her ability to perform her own occupation. Defendant's reliance on a generalized position as purportedly Ms. Buckman's "own occupation" represents a clear misapplication of the Plan's terms.

ELECTRONICALLY FILED - 2025 Jun 17 3:12 PM - SUMTER - COMMON PLEAS - CASE#2025CP4301109

29. In sum, any vocational analysis that does not center on Ms. Buckman's specific position description as defined by her employer is fundamentally flawed. The inclusion of unrelated occupations, coupled with the erroneous classification of her own role, renders the November 1, 2024, Transferable Skills Analysis an unreliable and impermissible basis for decision-making under the Plan. A proper assessment must adhere to the Plan's standards, accurately reflect Ms. Buckman's job duties, and take into account the extensive medical documentation that establishes her inability to perform those duties. Without these critical elements, the analysis fails to meet the Plan's requirements and cannot be relied upon to support any adverse determination.

30. Per Ms. Buckman's appeal on January 17, 2025, the Physician Review conducted as part of the evaluation process is fundamentally flawed and fails to accurately reflect the totality of Ms. Buckman's medical condition. The medical records previously produced, along with the supplemental records provided during the appeal process, unequivocally establish that Ms. Buckman is disabled within the meaning of the Plan. This body of evidence includes detailed documentation from her treating physicians, which confirms that her conditions preclude her from performing the material and substantial duties of her own occupation. Despite the clear and consistent evidence provided by these medical professionals, the Physician Review fails to account for critical aspects of her diagnosis, prognosis, and functional limitations. For instance, Dr. John Baker, a long-standing provider at Colonial Family Practice, made an unequivocal statement in the June 17, 2024 medical record: "...I do support her permanent disability..." (See page 9 of the PDF entitled Colonial Family Practice). This opinion is not only consistent with Ms. Buckman's medical history but also supported by diagnostic findings, clinical evaluations, and objective testing. Dr. Baker's statement is based on a thorough understanding of Ms. Buckman's condition,

ELECTRONICALLY FILED - 2025 Jun 17 3:12 PM - SUMTER - COMMON PLEAS - CASE#2025CP4301109

gained through direct and ongoing treatment. Such an assessment from a treating physician carries significant weight, as it reflects a comprehensive understanding of her medical status and its impact on her functional abilities. The Physician Review's failure to give proper deference to the opinions of Ms. Buckman's treating physicians demonstrates a disregard for the substantial evidence supporting her claim.

31. Additionally, the Physician Review upon which Defendant relies does not adequately address or reconcile the medical evidence that highlights the severity and chronic nature of Ms. Buckman's condition. Her medical records document persistent symptoms that significantly impair her ability to perform the essential duties of her job. These include, but are not limited to, the specific examples of symptoms and limitations Ms. Buckman describes in the PDF entitled Sheila Buckman Statement. The review relies on a cursory or selective interpretation of the medical evidence, which skews the analysis and undermines its credibility. The review's apparent reliance on non-examining consultants or incomplete records further exacerbates these deficiencies.

32. Moreover, the Physician Review fails to properly evaluate the cumulative impact of Ms. Buckman's conditions. Disability determinations under the Plan must consider not only the isolated symptoms of a single condition but also how the combined effects of her medical impairments render her unable to perform her job. By neglecting this holistic analysis, the Physician Review falls short of the standards required for a fair and thorough evaluation. This oversight is particularly egregious given the ample medical evidence provided, which clearly demonstrates that Ms. Buckman meets the definition of disability under the Plan.

33. The omission of substantive engagement with her treating physicians' opinions is another glaring issue. Courts and administrative bodies have long recognized that the opinions of

ELECTRONICALLY FILED - 2025 Jun 17 3:12 PM - SUMTER - COMMON PLEAS - CASE#2025CP4301109

treating physicians are entitled to significant weight, particularly when they are well-supported and consistent with the medical evidence as a whole. Dr. Baker's unequivocal statement regarding Ms. Buckman's permanent disability is precisely the type of opinion that should be central to the analysis.

34. In summary, the Physician Review upon which Defendant relies in denying Ms. Buckman LTD Benefits suffers from significant shortcomings that undermine its validity. It fails to adequately consider the opinions of treating physicians, including Dr. Baker's well-supported assessment of her permanent disability. It also neglects to evaluate the cumulative impact of her conditions and misrepresents or disregards key medical evidence. A proper evaluation must take into account the totality of the medical evidence, give due weight to the opinions of treating physicians, and adhere to the standards required under the Plan. Without addressing these deficiencies, the Physician Review cannot serve as a reliable basis for denying Ms. Buckman's claim.

35. Ms. Buckman remains disabled to the present.

36. The Social Security Administration determined that Ms. Buckman was permanently and totally disabled.

37. Ms. Buckman was previously receiving the Plan's LTD benefits through Defendant.

38. Despite Ms. Buckman's continuous total disability, Defendant has wrongfully failed to pay Plaintiff disability benefits as required by the Plan.

39. Ms. Buckman has exhausted all pre-suit remedies available to her. Defendant issued its final denial of benefits on February 27, 2025. Ms. Buckman timely files her lawsuit thereafter.

ELECTRONICALLY FILED - 2025 Jun 17 3:12 PM - SUMTER - COMMON PLEAS - CASE#2025CP4301109

**FIRST CAUSE OF ACTION AGAINST DEFENDANTS**
**(Violation of ERISA – Denial of Benefits)**

40. Where not inconsistent herewith and alternatively, if necessary, Plaintiff realleges the foregoing.

41. Plaintiff is entitled to disability benefits under the terms of the Plan.

42. Plaintiff is totally disabled from performing the material duties of her own occupation.

43. Plaintiff is a Class 1 employee, so the definition of disability applicable to her LTD benefit is "maximum Own Occupation", per page 10 of the Plan. Per page 11 of the Plan that means that, based on her birth year of 1974, Plaintiff is eligible for benefits until she is 67 years old.

44. Despite Plaintiff's continuous total disability, Defendant failed to pay Plaintiff disability benefits as required by the Plan.

45. Plaintiff seeks disability benefits due under the terms of the Plan, to enforce her rights under the terms of the Plan, and to clarify her rights to future benefits under the terms of the Plan, pursuant to 29 U.S.C. § 1132(a)(1)(B).

46. Plaintiff respectfully requests that the Court order Defendant to pay all amounts due and owing for Plaintiff's disability benefits under the terms of the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B).

47. Plaintiff also respectfully requests that the Court grant all awardable damages under 29 U.S.C. § 1132 to include the unpaid benefits, interest on the unpaid benefits, Plaintiff's attorney's fees and costs, lump sum for tax offset, and such other legal or equitable relief as the Court deems appropriate.

**SECOND CAUSE OF ACTION AGAINST DEFENDANT**

ELECTRONICALLY FILED - 2025 Jun 17 3:12 PM - SUMTER - COMMON PLEAS - CASE#2025CP4301109

**(Violation of ERISA – Breaches of Fiduciary Duties)**

48. Where not inconsistent herewith and alternatively, if necessary, Plaintiff realleges the foregoing.

49. Pursuant to ERISA, a fiduciary shall discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits with the reasonable care, skill, prudence, and diligence and in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

50. The Plan establishes that Defendant, as the Plan Administrator, has a duty to identify those eligible and ineligible to be a Plan participant and to properly classify Class 1 employees under the Plan.

51. Defendant engaged in misconduct in performing its duties under the Plan, as described above.

52. The false misrepresentations about Defendant willfully and repeatedly misclassifying Plaintiff as a Class 2 employee is material because an objective, reasonable person would have viewed that representation as sufficiently important and significant to whether Plaintiff received LTD benefits.

53. Defendant had knowledge and reckless disregard for the truth because it knew from Plaintiff, her physicians and her representatives the truth about Plaintiff's health status and inability to work in her own profession, as a Class 1 employee under the Plan.

54. Defendant owed a duty of care to Plaintiff to provide truthful information about the Plaintiff's classification for LTD benefits.

55. Plaintiff had a right to rely on truthful statements from Defendant Michelin.

ELECTRONICALLY FILED - 2025 Jun 17 3:12 PM - SUMTER - COMMON PLEAS - CASE#2025CP4301109

56. Defendant Michelin breached this duty of care when it continued to misclassify Plaintiff as a Class 2 employee, despite multiple appeals affirming that Plaintiff is a Class 1 employee under the Plan.

57. Defendant by falsely and intentionally misclassifying Plaintiff, ultimately leading to the termination of Plaintiff's LTD benefits.

58. Defendant had a duty of care to review the material given about Plaintiff and to only act upon truthful information when granting or denying LTD benefits to Plaintiff, and to act with the appropriate notices, reporting, and disclosures to Plaintiff.

59. Thereby, Defendant failed to fulfill its financial obligations to pay LTD benefits to Plaintiff.

60. Defendant also acted upon intentional misrepresentations to prevent and impede Plaintiff's rights protected by ERISA.

61. Plaintiff suffered consequent and proximate injury as a result of Defendant's false statements and intentional misclassifications and as a result Plaintiff brings this claim for breaches of fiduciary duties because Defendant, the plan administrator failed to fulfill its financial obligations to Plaintiff, the Plan participant, and it failed to disclose proper information and thereby breached its fiduciary duties to Plaintiff.

62. Plaintiff further brings this action pursuant to 29 U.S.C. Section 1132(a)(3) which permits Plaintiff to bring a civil action to enjoin any act or practice that violates any provision of ERISA Subchapter I or the Plan and to obtain other appropriate equitable relief to redress such violations and to enforce ERISA and the Plan.

63. Plaintiff is entitled to recover all damages that will place her in the position she would have been before Defendant's actions. Plaintiff seeks equitable relief damages to include

ELECTRONICALLY FILED - 2025 Jun 17 3:12 PM - SUMTER - COMMON PLEAS - CASE#2025CP4301109

but not limited to Plaintiff's benefit losses, attorneys' fees and costs, lump sum for tax offset, pre-judgment interest, and such other legal or equitable relief as the Court deems appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Sheila Buckman prays for judgment against Defendant for all damages as plead above in an amount to be determined by a jury and to the full extent allowed by law. Plaintiff further prays for pre-judgment interest and attorneys' fees and costs associated with this action and any such other relief as the Court may deem just and proper.

**CROMER BABB & PORTER, LLC**

BY: *s/Shannon M. Polvi*
Shannon M. Polvi (#101837)
1418 Laurel Street, Suite A
Post Office Box 11675
Columbia, South Carolina 29211
Phone 803-799-9530
Fax 803-799-9533
*Attorney for Plaintiff*

June 17, 2025
Columbia, South Carolina

STATE OF SOUTH CAROLINA

COUNTY OF SUMTER

IN THE COURT OF COMMON PLEAS

C/A No.: 2025-CP-43-01109

Sheila Buckman,

Plaintiff,

v.

The Lincoln Financial Insurance Company,

Defendant.

**CERTIFICATE OF SERVICE**

This is to certify that the undersigned employee of Cromer Babb Porter & Hicks, LLC, did cause to have served on June 17, 2025, a copy of the Summons and Complaint, by First Class Mail, certified mail, return receipt requested, postage prepaid, upon the defendant at the below indicated address:

**The Lincoln Financial Life Insurance Company**
**c/o Corporation Service Company, Registered Agent**
**35 North Pennsylvania Street, Suite 1610**
**Indianapolis, IN 46204**

***Certified Mail/Return Receipt Requested***
Tracking No.: 9590 9402 7290 2028 0329 00
Cromer, Babb and Porter LLC
1418 Laurel Street, Ste A
Columbia, SC 29201

***Receipt #91 7199 9991 7037 2950 9662***

Chaquita Richardson, Litigation Paralegal